**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PRESTON REX COOP,<br><br>Defendant. | No. CR04-4022-DEO<br><br>**REPORT AND RECOMMENDATION ON PETITION TO REVOKE SUPERVISED RELEASE** |

This case is before me on a petition to revoke defendant Preston Rex Coop's supervised release. The initial petition (Doc. No. 63) was filed January 10, 2013, and the first supplemental and substituted petition (Doc. No. 71) was filed on January 16, 2013. The Honorable Donald E. O'Brien referred this matter to me for the issuance of a report and recommended disposition (Doc. No. 65).

I held an evidentiary hearing on January 22, 2013. Plaintiff (the Government) was represented by Assistant United States Attorney Jack Lammers. United States Probation Officer Dustin Lutgen was also present. Coop appeared in person and with his attorney, Assistant Federal Defendant Robert Wichser. The Government presented the testimony of Officer Lutgen. Coop testified on his own behalf and proffered additional information through his attorney. He also made a statement to me.

## *I. BACKGROUND*

On August 6, 2004, Coop was sentenced to 84 months imprisonment and an eight-year term of supervised release based on his plea of guilty to conspiracy to distribute 50 grams or more of methamphetamine mixture within a protected location. *See* Doc. No. 21. On September 30, 2009, Coop was transferred to a Residential Reentry Center (RRC) in Council Bluffs, Iowa, where he participated in substance

abuse treatment. He was discharged from the RRC on March 30, 2010, and began serving his term of supervised release (TSR).

Upon his release, Coop initially lived with his father and began working for a roofing company. Coop violated the conditions of his supervised release numerous times and modifications were made with Coop's consent on October 4, 2010, January 20, 2011, and April 22, 2011. One of the modifications included having no contact with Nina Robertson, a known drug felon with whom Coop had a previous relationship. Doc. No. 27. Robertson and Coop had been arrested for simple assault and disorderly conduct on December 19, 2010. On September 8, 2011, Judge O'Brien revoked Coop's supervised release and sentenced him to 120 days imprisonment and a seven-year term of supervised release. Doc. No. 40.

Coop's second TSR began on January 23, 2012. It was modified with Coop's consent on February 17, 2012, to include up to 180 days at a RRC after Coop failed to appear for random drug tests and admitted to using methamphetamine. Doc. No. 41. Coop was admitted to the RRC, Dismas Charities, on March 6, 2012. After approximately 40 days he was required to leave, through no fault of his own, because Robertson was admitted to the same RRC as a Bureau of Prisons resident.

After leaving the RRC, Coop committed numerous additional violations of his TSR, including failure to comply with drug testing, use of a controlled substance, having contact with Robertson and not being truthful with Probation. Judge O'Brien held a revocation hearing on May 3, 2012. He continued the matter for three months and, at Coop's request, removed the requirement that Coop have no contact with Robertson. Judge O'Brien gave Probation the authority to reinstate this condition if problems developed between Robertson and Coop. Doc. No. 52. And, in fact, Probation did reinstate the "no contact" condition after Robertson pursued sexual assault charges against Coop and Coop pursued theft charges against Robertson in June 2012 (no formal charges were ultimately filed). Officer Lutgen testified Coop agreed at that time that he should have no contact with Robertson.

After additional violations of drug use, alcohol use and making a false statement to Probation, another revocation hearing was held on September 5, 2012. Judge O'Brien continued the matter for three months but modified the conditions to include remote alcohol testing. Doc. No. 61. Probation filed a report of noncompliance on November 15, 2012, stating Coop had been arrested for speeding and driving under the influence of alcohol. It recommended no action at the time because Coop was scheduled to participate in a 28-day inpatient program at Synergy Center on November 26, 2012. Doc. No. 62. Coop was released from the Synergy program on December 23, 2012. It is undisputed that he did well while in the program. Unfortunately, and as I will discuss further below, he resumed the use and abuse of alcohol soon after completing the program.

The current petition itemizes 17 categories of alleged violations. During the hearing, Coop admitted violations 13, 14 and 16 and held the Government to its burden of proving violations 15 and 17. Violations 1 through 12, which have been the subject of previous noncompliance reports and revocation hearings, have either been admitted by Coop or proved by the Government. These violations include failure to comply with drug testing on seven occasions, use of a controlled substance on three occasions, having contact with Robertson, not being truthful with Probation, alcohol use, a law violation and association with a known felon.

Admitted violations 13, 14 and 16 include three instances of failure to follow Probation's instructions, three instances of association with a known felon and two instances of use of alcohol. All of these violations involve Robertson. Violations 15 and 17 include a law violation and three instances of failure to comply with alcohol monitoring. The law violation was for an arrest by the Sioux City Police Department for public intoxication, which stemmed from a dispute between Coop and Robertson in an alley.

Officer Lutgen testified about the alcohol monitoring violations. The remote alcohol monitoring system requires Coop to answer a call at predetermined times and to

then submit a breath test. A photograph is taken when he submits the breath test. Coop failed to answer the alcohol monitoring call on the evenings of January 8, January 9, and January 10, 2013. Officer Lutgen testified that he receives daily reports of the results from the company that operates the alcohol monitoring system, which is how he knows Coop failed to provide breath tests on those dates. While denying these violations, Coop offered no evidence contradicting this testimony. I find that the Government has met its burden of proving violations 15 and 17 by a preponderance of the evidence. *See* 18 U.S.C. § 3583(e)(3).

## II. ANALYSIS

"A district court may revoke supervised release if it 'finds by a preponderance of the evidence that the defendant violated a condition of supervised release.'" *United States v. Holt*, 664 F.3d 1147, 1149 (8th Cir. 2011) (quoting 18 U.S.C. § 3583(e)(3)). The court's finding that a defendant has violated the conditions of supervised release is reviewed for clear error, while an order of revocation based on such a finding is reviewed for abuse of discretion. *United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003).

I find by a preponderance of the evidence that Coop violated the terms and conditions of his supervised release based on Coop's own admissions and the evidence presented by the Government. Having so found, 18 U.S.C. § 3583(e) requires that I consider certain specified factors set forth in 18 U.S.C. § 3553(a), in making a determination as to whether Coop's term of supervised release should be terminated, extended, modified, or revoked. Although I am not required to cite each relevant factor in § 3553(a), *see United States v. Franklin*, 397 F.3d 604, 607 (8th Cir. 2005), those factors are set forth below for the convenience of the district court in reviewing this Report and Recommendation:

> The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . . .

(4) the kinds of sentence and the sentencing range established for –

. . . .

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement –

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the

> Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (as referenced in 18 U.S.C. § 3583(e)). After considering these factors, I may terminate, extend, revoke or modify the term of supervised release as set forth in § 3583(e). Revocation is mandatory in this case pursuant to 18 U.S.C. § 3583(g) because Coop has refused to comply with drug testing imposed as a condition of release and he has tested positive for illegal controlled substances more than three times over the course of one year.

Probation recommends that Coop's term of supervised release be revoked and that he be sentenced to 30 months incarceration with no supervised release to follow. Officer Lutgen stated that all available community resources and opportunities have been tried and that none have changed Coop's behavior. Coop believes Probation's recommendation would not deter his conduct or aid in his rehabilitation. He testified about his struggle with substance abuse and acknowledged that he does better in a structured environment. He stated that he finds longer treatment programs more beneficial and that he believes he would continue to struggle with substance abuse if he was released immediately after incarceration.

### A. *Nature and Circumstances of Offense, and Coop's History and Characteristics*

Coop's original offense was conspiracy to distribute 50 grams or more of methamphetamine mixture within a protected location. He had a Criminal History Category of V at the time of sentencing.

Coop's history of violating the conditions of his TSR is simply staggering. He violated conditions of his first TSR to the point of revocation, thereby serving an additional term of imprisonment followed by a new TSR. Undeterred, he immediately began a fresh course of noncompliance.[1] Except for brief periods of time when Coop resided in a RRC, or in Synergy's inpatient treatment facility, his lack of compliance has been virtually constant.

Coop's volatile relationship with Robertson is not only a violation itself, but the circumstances surrounding many of Coop's other violations have involved Robertson. Coop testified that he cannot get Robertson to leave him alone and that she would break into his apartment. Coop admitted that he did not report all of the times he had contact with Robertson to Probation. Moreover, it is clear that Coop himself desired contact with Robertson, going so far as to convince Judge O'Brien to end (temporarily) the prohibition of contact between Coop and Robertson.

Unfortunately, Coop accepts virtually no responsibility for his actions. He does admit to being an alcoholic, but his testimony during the hearing shows that he uses this condition to rationalize his own bad behavior. At no point during his testimony, or while making a statement to me, did Coop apologize for repeatedly violating the conditions of his TSR. Instead, he blames circumstances supposedly beyond his control. He blames Robertson for virtually every bad decision he has made during his TSR. He complains about the fact that his stay at the RRC in 2012 was cut short. He complains that the Synergy inpatient program, which lasted 28 days, was not long enough. I was struck during the hearing by Coop's ability to blame his own behavior on others.

Coop has completed both outpatient and inpatient substance abuse treatment, to no avail. While it is unfortunate that his 2012 stay at Dismas was cut short, he did

---

[1] By "immediately, I refer to the fact that Coop's second TSR commenced on January 23, 2012, and he failed to appear for random drug tests on January 26, January 27 and February 7, 2012. *See* Doc. No. 71 at 1-2.

have the benefit of a full 180-day stay at a RRC at the conclusion of his initial prison term. That apparently had little or no lasting impact. As Officer Lutgen testified, Coop has been given the opportunity to take advantage of virtually every program and resource available in the community. Nothing has worked. When Coop is not confined under highly-structured conditions, he abuses drugs and alcohol, breaks the law and violates the conditions of his TSR.

B.     *Deterrence of Criminal Conduct*

Many of the violations here constitute the most serious grade of violation and the guideline range of imprisonment for these violations is 7 to 13 months. A previous revocation sentence of 120 days incarceration was imposed on September 8, 2011, and Coop continued to commit the same types of violations during his second TSR. Additionally, Coop has appeared for two revocation hearings during his second TSR but has continued to violate conditions while those matters have been pending. I find that a sentence above the guideline range is necessary to deter Coop's conduct given the number of violations he has committed in a short amount of time during his second TSR.

C.     *Protection of the Public from Further Crimes*

Coop has been arrested on two occasions during his second TSR. The first was on October 12, 2012, for speeding and driving under the influence of alcohol. According to the arrest report, Coop was driving 70 miles per hour in a 45-mile per hour zone. His preliminary breath test result was .221 and he later provided a breath test result of .206 on the data master. The disposition of that case is pending. On January 4, 2013, Coop was arrested for public intoxication. The arresting officer found Coop and Robertson having a dispute in an alley and noted that Coop was highly intoxicated and uncooperative.

Given Coop's long history of violating the conditions of his TSR, abusing drugs and alcohol and breaking the law, I find that a period of incarceration, followed by time in a RRC, is necessary to protect the public from further crimes.

### D. *Defendant's Need for Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Coop does not need educational or vocational training. He secured employment during his second TSR with Steve Kiraly Roofing. Probation contacted Mr. Kiraly on January 10 and he reported that Coop had called in sick for the previous six days. However, as proffered through Coop's attorney at the hearing, Mr. Kiraly stated Coop's employment has not been terminated and that he is a good worker, although he has several personal issues he needs to deal with.

Other correctional treatment has been provided to Coop numerous times. He was referred for substance abuse treatment on two occasions due to admitted drug use during his first TSR. During his second TSR he has resided in a RRC and completed both outpatient and inpatient treatment. As noted earlier, Officer Lutgen testified that there are no resources that have not already been offered to Coop.

### E. *Sentencing Considerations*

I am required to consider pertinent policy statements issued by the United States Sentencing Commission in effect at the time of Coop's sentencing. 18 U.S.C. § 3553(a)(5). I find two such policy statements to be relevant to this inquiry. The first, Classification of Violations, U.S.S.G. § 7B1.1 (Policy Statement), sets forth three grades of supervised release violations. The most serious of Coop's violations is a Grade C violation, which consists of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." Having so found, the court looks to the Sentencing Commission's instructions upon a finding of a Grade C violation: "Upon a finding of a

Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision." U.S.S.G. § 7B1.3(a)(2), Revocation of Probation or Supervised Release (Policy Statement). Based on his Criminal History Category of V, Coop's recommended range of imprisonment pursuant to the Sentencing Guidelines is 7 to 13 months, with a maximum statutory term of imprisonment of three years. *See* U.S.S.G. § 7B1.4 (Policy Statement); 18 U.S.C. § 3583(e)(3). The maximum statutory term of supervised release is life.

## F.   *Sentencing Disparities*

The final consideration is whether my recommended disposition will result in "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). The parties offered no evidence on this issue and I have no information to suggest that this is the case.

## G.   *Recommendation*

The Eighth Circuit has

> required that courts consider the policy statements in Chapter 7 [of the Sentencing Guidelines] when sentencing a violator of supervised release and [has] concluded that the suggested ranges in U.S.S.G. § 7B1.4(a) are only advisory. There are "no binding guidelines addressing the sentence for a violation of a condition of supervised release, only a policy statement about a court's options in such a situation."

*United States v. White Face*, 383 F.3d 733, 738 (8th Cir. 2004) (citation omitted) (quoting *United States v. Oliver*, 931 F.2d 463, 465 (8th Cir. 1991)). Failure to provide written reasons for sentencing outside the applicable policy statement range for revocation sentences is not reversible error, although written statements of reasons are helpful for the parties, reviewing courts, and the Sentencing Commission. *Id.* at 739; *accord United States v. Jones*, 973 F.2d 605, 607-08 (8th Cir. 1992) ("Because the Chapter 7 policy statements are not binding, the court is not required to make the explicit,

detailed findings required when it departs upward from a binding guideline."). "The district court is free to depart from Chapter 7's suggested sentences when, in its considered discretion, such a departure is warranted." *United States v. Carr*, 66 F.3d 981, 983 (8th Cir. 1995) (per curiam); *accord United States v. Jasper*, 338 F.3d 865, 867 (8th Cir. 2003).

I have given careful consideration to the factors set forth in 18 U.S.C. § 3553(a), and hereby recommend that Coop's TSR be revoked and that Coop be sentenced to 18 months incarceration. I further recommend that upon release, the terms of Coop's TSR be re-imposed for a period of two years of supervised release and that those terms be modified to require that he reside in a RRC for a period of up to 180 days. I find that this disposition will further the goals of deterrence and incapacitation, reflects the seriousness of Coop's conduct and provides just punishment for such conduct.

As discussed in detail above, Coop has repeatedly violated the conditions of his supervision, despite it having been previously revoked. Within the first year of his second TSR, he has committed 17 specified violations (some of which include multiple, separate violations). He has continued to violate conditions after having appeared for two prior revocation hearings. While Coop's addictions clearly contribute to these violations, he has been given numerous resources and opportunities to address those addictions during this second TSR. His behavior has not changed.

While I understand Probation's frustration with this situation, I do not believe that 30 months incarceration with no additional TSR would be sufficient to deter Coop's criminal conduct and protect the public from further crimes once he is released. I find that the circumstances warrant an upward departure from the guidelines and that 18 months of incarceration is appropriate. This term of incarceration provides just punishment for Coop's offenses, will make it impossible for him to abuse substances or have destructive contact with Robertson for a significant period of time and, hopefully, will deter him from further violations or crimes. Additionally, two years of supervised release with up to 180 days in a RRC will provide a structured transition for Coop outside

the strict confines of prison and give him the opportunity to become a contributing member of society.

I find that the sentence described above is "sufficient, but not greater than necessary, to comply with" the sentence's purposes as set forth in § 3553(a)(2) and will not result in any sentencing disparities. *See* 18 U.S.C. § 3553(a).

### III. CONCLUSION

Based on the foregoing, I RESPECTFULLY RECOMMEND that the Government's petition to revoke Coop's supervised release be **granted** and that Coop be sentenced to 18 months incarceration. I further recommend that upon release, the terms of Coop's TSR be re-imposed for a period of two years of supervised release and that those terms be modified to require that he reside in a RRC for a period of up to 180 days.[2]

Objections[3] must be filed **by February 7, 2013**. Responses to objections must be filed **by February 21, 2013.** However, I urge the parties to file any objections and responses as soon as possible to allow Judge O'Brien to issue a final ruling promptly.

---

[2] Coop has been detained since his arrest on January 14, 2013. Pursuant to Federal Rule of Criminal Procedure 32.1(a)(6), I ordered continued detention after the January 22, 2013, revocation hearing. My recommendation that Coop be sentenced to 18 months incarceration anticipates that he will receive credit for the time he has already served, even though the final ruling on the Government's petition will not be issued until a later date.

[3] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72; Fed. R. Crim. P. 59.

**IT IS SO ORDERED.**

**DATED** this 24th day of January, 2013.

                                                                        _____
                                                                         LEONARD T. STRAND
                                                                         UNITED STATES MAGISTRATE JUDGE
                                                                         NORTHERN DISTRICT OF IOWA